The next case this morning is number 520-0150, Articon Hotel Services, Inc. v. People's National Bank. Arguing for the appellant article, Articon Hotel Services, is Sean Cronin. Arguing for the appellees, Baldwin Enterprises, Inc. and People's National Bank, is John Humbley. Each side will have 15 minutes for their argument. The appellant will also have five minutes for expired. I will hit the gavel. Please remember only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning, judge. Are we ready to proceed? Yes, your honor. Then go right ahead, Mr. Cronin. Thank you very much. May it please the court. My name is Sean Cronin from Donovan Rose Nestor, and I represent Articon Hotel Services in this case. Articon Hotel Services is the defendant counter plaintiff in this case, but more specifically, it's the general contractor. This is a construction case. The plaintiff, Baldwin Enterprises, is the owner of a hotel in Mount Vernon, and the other party is People's National Bank, who Mr. Humbley is here to represent. I imagine he's also here arguing for with regard to the issue we're here to argue today. As I said, this was a contract claim for a hotel renovation. My client was a general contractor hired to do that renovation. The deal ended up falling apart. There are cross claims for breach of contract pending in the trial court, but that's not why we're here today. We're here today on an interlocutory appeal permitted pursuant to Rule 304. The parties had filed cross motions for summary judgment regarding a mechanics liens claim. In addition to the breach of contract claim, my client had a mechanics lien claim against the property owner. The reason the bank's involved is because the bank, because they have a mortgage and funded the renovations, also has a security interest in the property. Because they have a security interest, they're a necessary party in a mechanics lien claim. Otherwise, they wouldn't be involved in simply a contractual dispute. The parties filed cross motions for summary judgment with regard to the mechanics lien claim. My client filed a motion for summary judgment, partial summary judgment, saying that asking the court to declare that the mechanics lien is valid and enforceable and leaving open the question of the value of it and for the court to do an accounting. So, in essence, a partial motion for summary judgment on liability on a mechanics lien claim. The bank in Baldwin filed a cross motion for summary judgment on the affirmative defense of waiver. They're claiming on two different bases that my client waived its right to a mechanics lien claim completely and that the mechanics lien should be dismissed. The lower court granted their motions for summary judgment on the issue of waiver on both arguments made with regard to waiver and denied my client's motion for summary judgment. We're here to ask that the court reverse both of those rulings, reverse the ruling granting summary judgment as to the issue of waiver and reverse the ruling denying motion for summary judgment on the issue of liability on the mechanics lien claim. Because these are both summary judgment issues, the standard of review is de novo. So, everything's being looked at by this court with fresh eyes. We believe the record is complete to enable the court to review these issues and is overwhelmingly on the side of our argument. A brief history of the history between the parties. They entered into a contract to renovate this hotel in October 2015. It was a six million dollar contract. My client was well into renovating the hotel when about a year later they issued a draw request for $930,000. There had previously been seven draw requests and all of those were paid. This is the way construction financing works. A general contractor submits requests for periodic payments to fund the construction. Those periodic payment requests go through an escrow agent, a title company, in this case Benchmark. What happens is Benchmark, the title company, reviews the request, compares the request against the budget in the case, investigates at the construction site what was done, and then recommends to the owner whether or not to pay that disbursement. In this case, seven times that had happened and those disbursements were made. Each time a disbursement is made, the title company asks for a mechanics lien waiver in the exact amount of the disbursement that's being made. Seven times they had recommended the owner had approved that disbursement and then my client executed a mechanics lien waiver in the exact amount of that disbursement. In December 2016, my client submitted a disbursement request for $930,000. The title company did what they had done before and they recommended to the owner that that disbursement be paid. They testified in this case that the work that was requested had been performed and was performed pursuant to the contract and that they recommended that it be paid as the prior seven had been. The owner at that point arbitrarily and unilaterally declined to pay and said that he would not pay any more money on the project until the project was complete. This is in violation of the terms of the contract and the terms of the mechanics lien act. He had no basis for doing that. He then tried to take the fact that my client was owed $930,000 and use it to extort them to get concessions in the contract that didn't exist. He wanted new terms of the contract. He admitted this in his deposition testimony that that was his intention in withholding the money. My client pursuant to the express terms of the contract and the mechanics lien act stopped work and notified the owner that they were in default for non-payment. That's exactly what they're supposed to do and allowed to do. At the same time, they told the owner we're ready, willing, and able to continue the work but you need to pay us because it's economically impossible to continue the project when progress payments stop. My client as the general has to pay subcontractors and materials providers and you can't do that if you're not getting progress payment. The owner refused to They have to do that timely because mechanics liens are a creature of statute. In retaliation for recording the mechanics lien, the owner unilaterally terminated the contract and then he refused to negotiate anymore and he went off and hired his cousin to complete the project. He never paid my client $930,000. There's no genuine dispute that my client is owed $930,000 and that they have a legitimate mechanics lien. There is no dispute here that my client properly recorded and perfected that lien. Benchmark title, the escrow agent that is responsible for dispersing money and getting mechanics lien waivers and basically facilitating everything regarding mechanics liens does not dispute that my client's owed that money and neither does the owner. The bank hasn't submitted an affidavit or any other evidence to dispute that and that brings us to the mechanics lien issues. So the bank's argument is that my client waived its right to a mechanics lien, even though it properly recorded and perfected that lien. It's not about the amount owed and it's not about whether or not they recorded or perfected it. Their argument is that they waived it and waiver is an affirmative defense. The burden is on the person making an affirmative defense to prove their right to an affirmative defense. And on a summary judgment, that's a much greater burden. They have to bring forth evidence to support the affirmative defensive waiver. They've made two waiver arguments here. The first is that the escrow agreement for the benchmark title company that was facilitating the disbursements of the loans is that that contract itself contains a mechanics lien waiver that is a blanket waiver infinitum into the future. There are three reasons that is not a valid argument. One, that is specifically barred by the mechanics lien act. Section 60-1d of the mechanics lien act as amended in 2006 specifically says you can't have a blanket mechanics lien waiver in a contract at the beginning of the construction before the policy because naturally that would undermine the purpose of the mechanics lien act completely. If you could just say you have to sign this document at the very beginning before you ever get paid anything that waives your right to mechanics lien, then the mechanics lien act would effectively not exist. It would not exist at all. That issue is fully briefed. And if you look at the thing they're calling a waiver, it overtly isn't a waiver. It does not say that this constitutes a mechanics lien waiver. The mechanics lien act is intended to protect contractors. That's why it exists. It is an extra contractual remedy that every state in this country has instituted because contractors are especially vulnerable to wealthy property owners and banks. And they need more protection than just regular contract law. The Illinois mechanics lien act has existed for 200 years. Its overall purpose is to require a person with an interest in real property to pay for improvements or benefits which they have induced or encouraged by their own conduct. The statute itself says it's supposed to be liberally construed to effectuate its remedial purpose for contractors. That's who it's supposed to protect. So the blanket waiver in the escrow agreement, A, doesn't exist. And B, if it did, it directly violates the statute and the case law supports that. The second waiver argument, which is inconsistent with the first, is that my client executed five lien waivers that they claim are each full and final waivers of lien. First of all, the case law is very clear that lien waivers should be interpreted to effectuate the purpose of the act, which means remedial for the benefit of the contractor, and that any ambiguity in a lien waiver should be interpreted in favor of the contractor and against an assumption that he has voluntarily chosen to waive such a valuable remedy as a mechanics lien. Their argument is that in five of the seven lien waivers that were executed, each of which was executed pursuant to a specific disbursement. So for example, my client would request a disbursement of $200,000. The title company would recommend the owner pay it. The owner would approve the payment. And then my client would execute a mechanics lien and on that mechanics lien waiver, the exact number, dollar amount that he was receiving would be reflected on that. Benchmark title, who is the agent of the bank in Baldwin and the only person that testified about this issue admitted that their understanding the whole time was that each of those lien waivers was only with regard to the progress payment that was made. My client testified that they had the exact same intent and understanding. There has been no testimony to the contrary. That's a binding admission on the bank in Baldwin. Their argument is that the first lien waiver executed constituted a full and final waiver. In addition to the fact that their argument is that the escrow agreement itself was a full and final waiver. First, that would mean that the written mechanics lien waiver was a nullity. That it was completely pointless because they're saying they already had a waiver. So why is the escrow company continuing to ask for lien waivers if they already have a full and final waiver? And that same argument can be made for each subsequent lien waiver. Why would you get the second lien waiver if the first one was a full and final waiver for all work to be done in the future and all amounts unpaid? The same question for the third, the fifth, the sixth, and the seventh. It doesn't make any rational sense. The only thing that makes sense is, as is in the testimony, that all parties believed and understood that each lien waiver was only for the amount indicated on the waiver and limited to that amount. And that that necessitated a new lien waiver for each progress payment that was made. The bank has offered no evidence of reliance on the lien waivers. And if you look at the briefing, we briefed it extensively that you have to show reliance. They have the burden of evidence here. It's their affirmative defense. They've produced no evidence. Their agent has admitted that his understanding and my client's understanding is different than the argument made by the bank in Baldwin here. And if you're wondering why the bank's the one here arguing, it's because the mechanics lien takes priority over the bank's against the contractor getting paid for $930,000 of work that he has done. And so they have not established their right to the waiver. At the very least, your honors, there is a question of fact about whether or not that my client has waived under all these different arguments, his right to a mechanics lien. And when you consider that it's supposed to be liberally construed, when you consider they've produced no evidence and that the entire evidentiary record supports our argument and that there was in fact a meeting of the minds and that there was no blanket waiver at any point, we believe that you should reverse summary judgment with regard to the affirmative defensive waiver and reverse the denial of summary judgment in favor of my client because my client has a valid and enforceable mechanics lien. We're not asking you to decide what the value of that lien is. We're asking you to decide it's a valid and enforceable lien and send it back to the trial court for an accounting as to the value. Um, this is a miscarriage of justice. No one denies that these people did $930,000 worth of work and they weren't paid. This is exactly what the mechanics lien act is for. You shouldn't let technicalities, um, deprive someone of that, right? That's exactly what the case law says. And in fact, the statute itself says you should not do that. It should be liberally construed to effectuate its remedial purpose. So we respectfully request that on this de novo review, you realize the record supports these arguments and you send it down to the trial court and reverse both these orders. Um, and we would suggest that they've produced no evidence, but at the very least, there are questions of fact, lots of questions of fact about whether there was reliance and the intent of the parties and the meeting of the mind of the parties. Thank you. Thank you, counsel. Mr. Hundley. Thank you, judge. Good morning, your honors. My name is John Hundley. I represent, I am arguing on behalf of the appellees this morning. As is apparent from Mr. Cronin's comments, this case involves two different types of lien waivers. First is the lien waiver that was given in the escrow agreement. And the second is the, uh, progress payment lien waivers that were made as the project progressed. I'll be discussing both of these lien waivers this morning because all of Mr. Cronin's comments about, uh, the value of his, uh, claim and, uh, the alleged, uh, lack of dispute of his claim go out the window if he, uh, in fact waived that remedy. Uh, but first I suppose I have to deal with Mr. Cronin's argument that the escrow agreement contained no waiver in any event. The escrow agreement provided at page one, paragraph one, which appears in our appendix at page A2, that Articon would agree to fully construct and complete the improvements to the property, quote, free and clear from mechanics and material men's liens, close quote. Now that's a waiver. Doesn't use the word waiver, but under case law set forth in our brief, it doesn't have to. It's an intentional relinquishment of a known right, and that's the textbook definition of a waiver. If there were any doubt about this, Articon's subsequent conduct confirms it. Having given that blanket waiver, as Mr. Cronin calls it, having given that waiver in the escrow agreement, it then of its own volition delivered full and agent in exchange for the payments under the contract on five different occasions. Articon raises the question as to why we would require, uh, the progress payment waivers if there'd been a waiver in the escrow agreement. It's as if Articon's never heard of the principle of belts and suspenders. The two tools are not inconsistent. They work for a common objective as to the use of belts and suspenders in commercial context. I'd suggest the court check out Great Western Casualty Company versus Robbins 833 F 3rd 711 at page 718 approving of same. But Mr. Cronin argues if the waiver was there, it was unlawful under Section 1D. Under Section 1D requires two things in order for, uh, the waiver to be unlawful. It requires that the waiver have been given in anticipation of the awarding of the construction contract, and it requires it have been given in consideration for the construction contract. Neither test is met here on the anticipation element. Anticipation by definition means that something happens before the other thing. Here the escrow agreement was made 14 months after the construction contract had been awarded in August of 2014. It was not made in anticipation of the awarding of the construction contract, nor was it made in consideration for the awarding of that contract. Not one word in the construction contract suggests it was contingent on a lien waiver, and Articon has produced no extrinsic evidence to that effect either. All Articon has done in its brief is to attack vociferously the 2014 contract, but it doesn't dispute the key facts regarding that contract. It doesn't dispute that it signed that contract in August of 2014. It admits that it took $175,000 in payments under that contract in August of 2014. It doesn't dispute that it was that that contract was revised due to cost changes during the course of the project, and it doesn't dispute that it started work on the project before the revision was ever signed. All Articon does is create this false issue as to what is the quote applicable contract, but that's not that what the statute directs us to our attention to. Under the statute you look to when was the contract awarded. Indisputably here the contract was awarded in August of 2014, that it was later revised into what Mr. Cronin calls the applicable contract in October 2015 is really irrelevant, statutorily irrelevant. Next Articon argues that the, in its brief, that it was the escrow agreement was not supported by consideration, but here there's clearly consideration for the escrow agreement, the new promises made by Baldwin as well as the fact that a new party, People's National Bank, comes in with additional promises and agreements in the escrow agreement. In its brief it further argues that the waiver became void upon termination of the escrow agreement. This is contrary to the ruling of Jankowiak versus Butcher, which holds that a previously given lien waiver remains effective even in the case of breach by the owning party. And it's contrary to general contract law. Finally, Articon argues that the escrow agreement was conditioned upon Baldwin making all payments under the contract. The plain language of the provision upon which it relies, which is set forth at page 28 of our brief, rebuts this interpretation. The law of conditions set That brings us to the five full and final lien waivers that were given during the course of the progress of the project. We start our analysis there with the recognition that waivers as to future materials and services are enforceable under Illinois law. That's the Farber case, the Opperley case, and the Capital Plumbing case set forth in our brief. But Articon argues that it did not intend to give full and final lien waivers. This is a strange argument coming from Articon since Articon alone chose the words that are now at issue. The form for waiver has a box on it for full waivers and has a box on it for partial waivers. In each of the five waivers that are now at issue, Articon of its own volition checked that it was a full and final waiver. After the first one then, why were the others needed? A waiver was collected on each occasion. It gets back to the belt and suspenders principle. More important, where a waiver unambiguously states its intent, the waiving party may not later contradict it as is attempted here. The language of the document controls on the issue of intent. That's the Country Service case, the Decatur Lumber case, the Ambrang case, and the Farber case all set forth in our brief. Moreover, the language of the waiver here is relevant. It addresses both its effect and the intent of the parties. Contrary to Mr. Cronin's argument, the waiver here states, and I quote, this waiver is applicable to any claims for payment for work which may hereafter be performed on or for the property. This waiver is intended to be a full and final waiver, close quote. Moreover, where a contractor has received funds in exchange for a full and final waiver, it may not repudiate that waiver. Here it's indisputed that Articon received over 2.1 million dollars in exchange for the waivers now at issue. Finally, Articon relies upon a alleged trade custom to, in an attempt to reform the final waivers into partial waivers. This attempt should be rejected for at least four reasons. First, Articon's subcontractor cases are not applicable here. All the cases relied upon by Articon in this portion of its brief are brought by involved subcontractors, and the context here is a general contractor in privity with the owning party. The subcontractor context is meaningfully and substantially distinguishable for reasons that we set forth in our brief, and accordingly we think Articon's cases are inapplicable. Moreover, the second point I'd like to make is that Articon did not carry its burden of proof under its own cases. Here under Articon's cases, the burden on the mechanics lien respondent is simply to produce a copy of the lien waiver. Upon production of the waiver, the burden shifts to the mechanics lien claimant to prove that there was no reliance upon that waiver. Here Articon, in its opening brief, admits there's no evidence of lack of reliance, and in fact Articon here received 2.1 million dollars in reliance on the waivers now at issue. Thirdly, Articon's trade custom argument is improper. Articon seeks through its trade custom argument to contradict the express language of the waiver under the great weight of Illinois authority set forth in our You can use trade custom evidence to explain an ambiguous term, but you cannot use it in order to contradict the express language of the document. Fourthly and finally, Articon's trade custom was insufficiently established here, even if it were otherwise permissible. Articon did not show its trade custom through the testimony of several witnesses, as the cases require. It did not show the length of time that the custom had been extant in the industry. It did not show that there's a presumption that all contracts in the industry are so made, and most importantly it did not show that People's National Bank or Baldwin Enterprises, which are not in the construction industry, knew anything about this alleged custom. All Articon relied upon was the conclusory paragraph 27 of its affidavit that appears at page A78 of their appendix, and the testimony of Mr. Rhodes at Benchmark that appears at pages 90 and 91, transcript pages 90 and 91, and their appendix at page A69. When you consult these authorities, you find that there is clearly insufficient evidence to support the trade custom under the law. The testimony to Mr. Rhodes was made in response to a clearly objectionable question, with the objection stated on the record and preserved for judicial review. Even if you decide that this portion of the transcript should be customer industry usage, and he did not testify to any of the facts that are necessary to prove such a trade customer industry usage. Moreover, contrary to Mr. Cronin's argument, he was not our agent for purposes of the deposition. I'd like briefly to address the counter motion which Articon made below and which it presses here. It's axiomatic in a case like this that both sides can't win. Upon the lower court having found that the lien was waived, it was duty bound to find that Articon's counter motion could not be enforced. The same situation applies here. Moreover, Articon's motion must be rejected for at least two additional reasons. First, Articon did not distinguish between lienable and non-lienable items when it presented its counter motion. Lienability is a function of section one of the act. It's the claimant's burden. If items are not separated as to lienable and non-lienable, the whole claim falls. Articon's response to these incontestable legal principles is to claim that there's no showing of trade fixtures being involved here. But Articon knows better. Articon's own counter claim, paragraph 62, which appears in their appendix at page A9, states that on or about January 24, 2017, Articon submitted draw request for A, a part of what's at issue here, for F, F, and E, that's furniture fixtures and equipment, trade fixtures, in other words, which amount remains unpaid. Under the Miller versus Reed case of this court, that means that the Articon's lien is unenforceable. Moreover, Articon failed to show enhancement when it brought its motion. We've emphasized in our brief those portions of section 16, which require enhancement to support that view. Articon relies upon but two cases, and we show how they misinterpret them at pages 65 and 66 of our brief. The fact of the matter is that to trump a mortgage lien, you must prove enhancement, and Articon produced no evidence of enhancement here. For these reasons and those stated in our brief, we respectfully ask the court to affirm the judgment of the circuit court. Thank you. Thank you, Mr. Hundley. Mr. Cronin, any rebuttal? Yes, thank you, your honor. With regard to the blanket waiver they claim was in the escrow agreement, the bank's effort to backdate the contract to August of 2014 is telling with regard to how far they're trying to stretch the facts in this case to pigeonhole into this argument that lacks any merit. Baldwin and the bank both alleged and admitted numerous times in the pleadings in this case, and in all testimony in this case, that the contract was entered into in August 2015, not August 2014. The reason the bank wants to make that argument, and they're jumping through so many hoops to try to do it, is that they understand that if the escrow agreement was entered into the day after the construction contract, it's part and parcel of the construction contract. Put it this way, the escrow agreement, the only consideration my client gets for signing it is they get paid under the construction contract. In fact, they can't get paid under the construction contract unless they sign the escrow agreement. It's required, and Baldwin in their complaint, they're the plaintiff here, they alleged that the contract from October 2015 and the escrow agreement are part and parcel of the same contract. They are the same contract, and they can't undo that admission. It's their alleged. It's only for purpose of summary judgment. They've invented this argument that the contract's actually from a year before, and this is exactly the kind of blanket waiver you can't have in a construction contract or in an escrow agreement a day after the construction contract, where it's a blanket lien waiver. It violates the express provisions of the Mechanics Lien Act, and it would be the exception that doesn't swallow a rule. It would swallow the entirety of the act, because every escrow agreement ever, which every contractor has to sign to get paid, would always have a blanket waiver in it, and if you could do that, there is no Mechanics Lien Act, so I think it's a meritless argument. The five lien waivers, somebody, judge, you asked exactly the right question. Why would you have to keep executing lien waivers if each one of them was a full and final waiver, and the answer is they're not. Again, Benchmark is their agent. There's no contrary evidence. Their own agent, for purposes of the Mechanics Lien Waiver, said, I intended and believed those Mechanics Lien Waivers were only with regard to the amount written on them and with regard to each disbursement amount. He said he does not believe they covered the $930,000 that was unpaid. There is no contrary testimony in that regard. When they say my client put the final waiver language in there, that's not true. There are small boxes on these lien waivers, and on some of them, not all of them, my client checked a box that had some very fine print that said this is full and final. He testified, he meant full and final as to the amount that he was being paid that day. Benchmark testified exactly the same. There is numerous case law that supports the intent of the parties and what was their actual meeting of the minds, especially under the umbrella of the liberal interpretation of the Mechanics Lien Act. If you look at the Kordek case, it's exactly on point. On page 18 of our brief, the page number might be wrong, but the Kordek case. We cited testimony in that case of a contractor where he says, did you write final on this thing? He says, yeah, but I didn't mean final for the whole thing. The court reversed summary judgment in favor of the property owner and said, look, where there's evidence that the intent wasn't for it to be final, there's at least a question of about what that intent is. And so there's no strict construction of a box that was accidentally checked to deprive someone of their mechanics lien rights. That's not the way it works. And there's no evidence that anyone actually believed that in this case, the course of conduct of the parties and trade practice supports that each mechanic lien waiver was for each amount that was paid. There's no question that the 930,000 goes unpaid. And that's what somebody got to their business and their lives. Somebody got to keep 930 grand. And it sounds like it was the bank and it was to the detriment of my client. And that violates the spirit of the law and the letter of the law. And there's no evidence in this case to support that that's what should have happened. At the very least, this should be reversed in that there's at least a question of fact with regard to whether or not there was an intention to waive my client's right to mechanics lien. But there really is no evidence to support that I think there's no questions of fact, and you should just reverse it. And again, I'd reiterate that there's no dispute that my client wasn't paid that money. There's no dispute that that work was done under this construction contract for the improvement of a hotel. Council says we have to prove that that was leenable, but we don't it was for a construction contract. And that's not in dispute. The work that was done was to renovate the hotel and improve real estate. So we respectfully request that the court reverse on the affirmative defenses. Thank you, counsel. This matter will be taken under advisement and an order will be issued in due course. Thank you very much. Thank you.